**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Garza, | No. CV-20-08278-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Michelle Garza's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 17, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 18, "Def.'s Br."), and Plaintiff's Reply (Doc. 19, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 16, R.) and affirms the Administrative Law Judge's ("ALJ") decision.

**I.      BACKGROUND**

Plaintiff applied for Social Security Supplemental Security Income ("SSI") benefits on November 13, 2014. (Pl.'s Br. at 2.) On October 2, 2019, an ALJ issued a decision denying Plaintiff's application. (Pl.'s Br. at 2.) On August 25, 2020, the Appeals Council denied a request to review the ALJ's decision. (Pl.'s Br. at 2.) The present appeal followed.

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work.

20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III.   ANALYSIS**

The issues presented to this Court for review are: (1) whether substantial evidence supported the ALJ finding at step two; (2) whether substantial evidence supported the ALJ's assessment of the consultative examiner; and (3) whether substantial evidence supported the ALJ's assessment of Plaintiff's symptom testimony. (Pl.'s Br. at 1-2; Def.'s Br. at 1.)

**A.   Any Error in the ALJ's Step Two Analysis Was Harmless**

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). In order for an impairment to be severe, it must satisfy certain criteria. First, the impairment must constitute a medically determinable impairment, meaning it must be established by medical evidence from an acceptable medical source. 20 C.F.R. § 416.921. A claimant must establish a physical or mental impairment with medical evidence consisting of signs, symptoms, and laboratory findings, not by symptoms alone. 20 C.F.R. § 416.908. In addition, a severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). In the present case, the ALJ found that Plaintiff's insomnia, fatigue, and abdominal pain were not severe impairments, and substantial evidence supported the ALJ's assessment. (R. at 25-26.) Plaintiff argues the ALJ's finding that her insomnia, fatigue, and abdominal pain were not severe impairments is not based on substantial evidence. (Pl.'s Br. at 16.)  After reviewing the record, the Court need not determine if the ALJ erred in its step two analysis because the ALJ discussed the evidence regarding Plaintiff's abdominal pain, insomnia, and fatigue, including the opinions of Dr. Vu and Mr. Berringer, later in the decision, curing any error (R. at 30-34).

*See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("Even assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless" because the ALJ discussed bursitis later in the sequential analysis.).

### B. The ALJ Did Not Err by According Great Weight to the Consultative Examiner

Next Plaintiff argues that the ALJ erred by according great weight to the report of consultative examiner, Dr. Shannon Tromp. (Pl's. Br. at 12.) Plaintiff claims the ALJ relied on the medical opinion of Dr. Tromp's report but did not explain why the ALJ did not adopt certain aspects of the medical opinion. After reviewing the record, the Court disagrees. Though there are some raw findings from Dr. Tromp's report that are not included in the ALJ's opinion, the ALJ did accommodate the function-by-function opinion in her analysis of Plaintiff's residual functional capacity ("RFC") and thus did not err.

Dr. Tromp examined Plaintiff twice. (Def.'s Br. at 7.) The February 22, 2016 examination report showed Plaintiff was diagnosed with depressive disorder, PTSD, and cognitive disorder. (R. at 1028.) On April 29, 2019, Plaintiff returned to Dr. Tromp. (R. at 2911.) At the second examination, Plaintiff stated having trouble being out in public, depression, and sleep difficulty. (R. at 2911-12.) Other than taking prescribed medication, Plaintiff did not receive treatment for her mental impairments. (R. at 2912.) She spent her time reading, playing computer games, doing chores, and sporadically going out into public for necessary shopping trips. (R. at 2912.) A general mental status examination was unremarkable. (R. at 2913-14.) Plaintiff scored in the borderline and low average ranges of the Weschler Adult Intelligence Test and scored in the low average range in the Weschler Memory Scale. (R. 2914-15.) Ultimately, Dr. Tromp diagnosed Plaintiff with a neurocognitive disorder, a major depressive disorder, PTSD, and anxiety. (R. at 2915.) Dr. Tromp then translated her findings into concrete workplace limitations by stating Plaintiff had marked limitations in areas related to complex instructions, no to mild limitations in areas related to simple instructions, and moderate social limitations. (R. at 2907-09.)

The ALJ concluded that Dr. Tromp's findings support that Plaintiff is capable of performing work with one to two step instructions in an environment with only superficial and occasional contact with others. (R. at 32-33.) In determining the RFC, the ALJ must assess medical evidence and Plaintiff's descriptions of her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). This is precisely what the ALJ did here. As a result, the ALJ did not err.

### C. The ALJ Did Not Err by Giving Less Weight to Plaintiff's Symptom Testimony

Plaintiff also argues that the ALJ erred by giving less weight to her symptom testimony. (Pl.'s Br. at 14–16.) Although credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear[,] and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (internal citations omitted).

"An ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). General findings pertaining to a claimant's credibility, however, are not sufficient. *See Lester v. Chater*, 81 F.3d 821 (9th Cir. 2005). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In doing so, the ALJ need not engage in "extensive" analysis, but should, at the very least "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [her] conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Moreover, if the ALJ explains her decision "with less than ideal clarity, a reviewing court will not upset the decision on that account if [her] path may reasonably be discerned." *Alaska Dept. of Env't Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004); *see Brown-Hunter*, 806 F.3d at 492 (applying this rule to the social security context). The ALJ may

consider "[the claimant's] reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [she] complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ rejected Plaintiff's statements as "not entirely consistent with the medical evidence and other evidence in the record." (R. at 15.) In support of this conclusion, the ALJ makes numerous references to specific evidence in the record, including objective medical evidence and Plaintiff's activities. For example, Plaintiff's activities were inconsistent with her claims of disabling limitations. Plaintiff's daily activities included caring for her cat, performing personal care, managing medications, preparing simple meals, performing simple household chores, going out alone, shopping in stores and by phone, managing personal finances, and enjoying hobbies and interests, which included watching television, doing puzzles, and writing. (Def.'s Br. at 11-12.) Although these activities are not direct evidence that Plaintiff could work, they are evidence that Plaintiff is less limited than she alleged. 20 C.F.R. § 404.1529(c)(3)(i); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citations and quotation marks omitted).

Further, an ALJ may give more weight to medical opinions than a claimant's subjective statements. *See* 20 C.F.R. § 416.929(c)(4) ("We will consider . . . statements by your treating or nontreating source"); *Carmickle v. Comm'r Soc. Sec. Admin.* 533 F.3d 1155, 1161 (9th Cir. 2008) (examining source's opinion was a proper basis for rejecting a claimant's testimony); *Green v. Berryhill*, 744 F. App'x 336 (9th Cir. 2018) (unpublished)

(nonexamining opinion supported finding that claimant's statements were not fully reliable).  Here, objective medical evidence did not support Plaintiff's testimony. Dr. Vu, who reviewed the entire record, testified that Plaintiff had a history of abdominal pain, insomnia and fatigue, but none of these impairments caused physical limitations, and, therefore, were not severe. (R. at 113-16). Regarding her mental impairments, Dr. Tromp stated that Plaintiff could not perform complex tasks but could perform simple tasks with moderate social limitations. (R. at 2907-09.) Similarly, Dr. Akins stated that Plaintiff could handle simple but not complex information, and overall had moderate limitations. (R. at 110-11.) Also, Dr. Budworth and Dr. Brode, the two State expert psychological consultants, reviewed the medical record and opined that Plaintiff could perform simple one to two step tasks with occasional, superficial contact with others (R. at 127-29, 131-33, 148-50, 153-55.) The ALJ's explanation that Plaintiff's activities and the objective medical evidence conflicted with her testimony was sufficiently "specific, clear and convincing." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen*, 80 F.3d at 1281). Accordingly, the ALJ did not err.

**IT IS THEREFORE ORDERED** affirming the October 2, 2019 decision of the Administrative Law Judge.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 6th day of July, 2022.

Honorable John J. Tuchi
United States District Judge